Cheshire
No. 94-006

THE STATE OF NEW HAMPSHIRE

v.

CRAIG CONANT

July 11, 1995

*Jeffrey R. Howard,* attorney general (*John P. Kacavas,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. A jury in Superior Court (*Mangones,* J.) convicted the defendant, Craig Conant, of three felonies arising out of transactions involving the sale, possession, and criminal solicitation of controlled substances. RSA 318-B:26, I(b)(1) (Supp. 1991); RSA 318-B:26, I(d)(1)

(Supp. 1994); RSA 629:2 (1986). The defendant argues that the trial court erred by admitting certain tape recordings into evidence. We affirm.

After being arrested for possessing approximately eighteen pounds of marijuana, Joel Gomarlo (the informant) agreed to assist police in their investigation of other crimes involving illegal drugs. Initially, the informant lied to the police by giving them "false names." Later, the informant told a police detective that the defendant had told him that the defendant had "gotten one-half pound of cocaine and was looking for some pounds of pot." The detective related this information to an assistant county attorney, who recalled that the defendant had been charged previously with possession of illegal drugs. The assistant county attorney testified that based on this information, he had determined that there was "a reasonable suspicion" that an intercepted conversation between the informant and the defendant, obtained via a body wire or telephone tap, would "yield evidence of a violation of RSA 318-B." He therefore authorized a one-party intercept pursuant to RSA 570-A:2, II(d) (Supp. 1994). *See* RSA 570-A:2, II(e) (Supp. 1994).

Thereafter, the informant met with the defendant several times. He wore an electronic intercept device to these meetings, which recorded incriminating conversations between him and the defendant.

The recordings led to the defendant's arrest for drug-related crimes. Before trial, the defendant moved to suppress the electronically-intercepted conversations and all other evidence obtained as a result of them. The motion was denied. A jury found the defendant guilty, and he appealed, arguing that the intercept authorizations were not based on reasonable suspicion as required by RSA 570-A:2, II(d).

RSA 570-A:2, II(d) permits an investigative or law enforcement officer "to intercept a wire or oral communication, when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." The statute prohibits this type of intercept, however, unless the attorney general or a statutorily approved delegate, *see* RSA 570-A:2, II(e), "determines that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception." RSA 570-A:2, II(d). Where the offense under investigation falls under the controlled drug act, RSA ch. 318-B, the attorney general may delegate his or her authority under RSA 570-A:2, II(d) to a county attorney, who may in turn delegate the authority to "any assistant county attorney in his office." RSA 570-A:2, II(e). Without a proper finding of reasonable suspicion, the intercepts may not be used as evidence at trial. *See* RSA 570-A:6 (1986). In our analysis of RSA 570-A:2, we will

interpret the phrase "reasonable suspicion" as we do in constitutional cases involving investigative stops. *See, e.g., State v. Pellicci,* 133 N.H. 523, 528–29, 580 A.2d 710, 713 (1990).

After an evidentiary hearing on the defendant's motion to suppress, the trial court found that the assistant county attorney's authorizations were based upon a reasonable suspicion that evidence would be derived from the interception. A trial court's findings on reasonable suspicion will be upheld unless clearly erroneous. *Cf. State v. Brown,* 138 N.H. 407, 409, 640 A.2d 286, 287 (1994) (appellate review of probable cause determination).

Under RSA 570-A:2, II(d), reasonable suspicion exists when "specific and articulable facts which, taken together with rational inferences from those facts," *State v. Kennison,* 134 N.H. 243, 247, 590 A.2d 1099, 1101 (1991) (quotation omitted), lead the authorizing official to believe "that evidence of criminal conduct will be derived from [an] interception," RSA 570-A:2, II(d). In determining whether the assistant county attorney properly authorized the intercept, we look to the totality of the circumstances, which includes an examination of the overall reasonableness of the authorization. *See Kennison,* 134 N.H. at 247–49, 590 A.2d at 1101–02. During this examination we do not consider the evidence discovered as a result of the intercepted conversations because to do so would legitimize use of any electronic recording device as long as it ultimately revealed evidence of illegality. *Cf. State v. Santana,* 133 N.H. 798, 804, 586 A.2d 77, 81 (1991) (evidence derived from search challenged under State and Federal Constitutions).

In reviewing the totality of the circumstances, we examine the informant's veracity and basis of knowledge, as well as "other indicia of reliability." *State v. Christy,* 138 N.H. 352, 357, 639 A.2d 261, 264 (1994) (probable cause analysis) (quotation omitted). "The factors used to evaluate the informant's reliability, credibility, and basis of knowledge are the same" as those used in analyses of probable cause. *Kennison,* 134 N.H. at 247, 590 A.2d at 1101. However, "[t]he quantity of information needed to support reasonable suspicion is of course less than that required for probable cause." *Id.*

The informant's veracity or credibility may be inferred if the informant has "an established track record with the police [or has] offered to demonstrate her reliability," *Christy,* 138 N.H. at 357–58, 639 A.2d at 265 (citations omitted); or if the tip is against the informant's penal interest, *id.* at 359, 639 A.2d at 266, and the informant has "no apparent reason to lie," *Dutton v. Evans,* 400 U.S. 74, 89 (1970) (indicia of reliability in determining whether hearsay testimony is admissible); *but see State v. Wilkinson,* 136 N.H. 170, 174–75, 612 A.2d 926, 928–29 (1992) (informant's possible desire for private vengeance against person implicated by tip did not negate informant's credibility).

■ Absence of information concerning an informant's reliability, in and of itself, does not require a finding of no reasonable suspicion if the basis of knowledge is otherwise sufficient. *See State v. Hazen,* 131 N.H. 196, 201, 552 A.2d 77, 80 (1988). An informant who has personally observed incriminating behavior has a stronger basis of knowledge than does an informant who relates not what he knows personally, but what he has heard others say. *See State v. Bradberry,* 129 N.H. 68, 75, 522 A.2d 1380, 1383-84 (1986). Moreover, an explicit and detailed description of alleged wrongdoing is entitled to greater weight than a general assertion of criminal activity. *Compare Christy,* 138 N.H. at 357, 639 A.2d at 264-65 (informant gave specific description of defendant's *modus operandi) with Kennison,* 134 N.H. at 247, 590 A.2d at 1101 (anonymous informant stated only that he had observed marijuana in trunk of defendant's car).

Police corroboration of part of an informant's tip may compensate for an informant's lack of credibility and basis of knowledge. *Alabama v. White,* 496 U.S. 325, 329-32 (1990). If law enforcement officials are able to corroborate an informant's prediction of someone's future behavior, therefore, the tip may supply reasonable suspicion even if the informant was not otherwise credible and did not provide a basis of knowledge. *See id.*

Also relevant to our examination of reasonable suspicion is whether the police have other incriminating evidence, *see, e.g., Christy,* 138 N.H. at 358-59, 639 A.2d at 266 (police had received tips from other informers within narrow time frame), and whether the person implicated by the informant's tip has a criminal reputation, *United States v. Harris,* 403 U.S. 573, 579-80 (1971). A bare allegation that a person has engaged in criminal activity in the past, however, without specifying the nature of the acts and how recently they occurred, does not support a finding of reasonable suspicion. *See Kennison,* 134 N.H. at 248-49, 590 A.2d at 1102.

Having set forth some of the relevant considerations in the totality-of-the-circumstances test, we proceed to determine whether the informant's tip in this case created a reasonable suspicion under the totality of the circumstances.

■ The defendant argues that the informant lacked reliability because he had no track record with the police, because he initially lied to the police by supplying them with false names, and because he was from the "criminal milieu." The informant's offer to demonstrate his reliability by wearing a body wire and personally arranging a drug purchase, however, gave the assistant county attorney reason to believe that the informant was telling the truth regarding the defendant.

■ The defendant also argues that the informant's basis of knowledge was minimal. The informant could have demonstrated a

stronger basis of knowledge by describing the circumstances under which he came to be discussing illicit drugs with the defendant; however, the informant was a direct participant in the conversation regarding the defendant's possession of cocaine and his desire to obtain marijuana. His tip was therefore based on firsthand knowledge.

Finally, the defendant cites *Kennison* to support his proposition that the assistant county attorney's recollection that the defendant had been charged previously with possession of a controlled drug "is of virtually no weight." In *Kennison,* however, the police officer had information only of Kennison's "possible involvement" with illicit drugs four years earlier. *Kennison,* 134 N.H. at 248–49, 590 A.2d at 1102. A mere assertion of a person's possible involvement with drugs, which is conclusory and vague, differs qualitatively from a recollection that a person had actually been charged with drug possession. While such a recollection alone would not support a finding of reasonable suspicion, it is a factor to be considered in the totality of the circumstances. *See Harris,* 403 U.S. at 575, 579–80.

We conclude that under the totality of the circumstances the informant's tip exhibited sufficient indicia of reliability to justify use of electronic interception devices and that suppression of the evidence thus obtained was not warranted. RSA 570-A:2, II(d).

*Affirmed.*

All concurred.