Rockingham
No. 95-063

THE STATE OF NEW HAMPSHIRE

v.

PHILIP G. HOOD

July 16, 1996

*Jeffrey R. Howard*, attorney general (*Ann M. Rice*, assistant attorney general, on the brief and orally), for the State.

*Stephen T. Jeffco, P.A.*, of Portsmouth (*Stephen T. Jeffco* on the brief and orally), for the defendant.

THAYER, J. The defendant, Philip Hood, was found guilty on stipulated facts of possession of a controlled drug with intent to distribute. *See* RSA 318-B:2 (1995). On appeal, he argues that the Superior Court (*Gray*, J.) erred in denying his motion to suppress. We affirm.

Some time prior to January 1994, police officers working for the New Hampshire Drug Task Force learned from an anonymous informant that the defendant was selling cocaine at bars in Portsmouth. Further investigation revealed that the defendant had previously been arrested for drug offenses.

The officers also learned from the informant that on January 11, 1994, the defendant planned to travel to Lynn, Massachusetts, to purchase cocaine. The informant told the officers that the defendant would be accompanied by Paul Shea, a Portsmouth resident, and that the men would be driving Shea's red Ford pickup truck. The informant provided the officers with the license plate number of the truck.

Relying on that information, the officers decided to conduct surveillance of both men on January 11. In the late afternoon, they watched Shea drive a red pickup truck bearing the identified license plate number to the defendant's house. Shea picked up the defendant and the two men drove to Lynn. When they arrived, the defendant went into a bar. The defendant met a third individual,

took him for a short ride, and then returned him to the bar. Following that meeting, the defendant and Shea returned to New Hampshire.

Believing that the defendant had purchased cocaine in Lynn, officers stopped the pickup truck when it arrived in Portsmouth. Detective Albert Kane approached the truck and spoke to the defendant. Detective Kane identified himself and said that he believed the defendant purchased drugs during his trip. The defendant then stepped out of the vehicle, removed a plastic bag containing cocaine from his pocket, and handed it to Detective Kane. He told Detective Kane that he wanted to cooperate.

The defendant was arrested and indicted for possession of a controlled drug with intent to distribute. See RSA 318-B:2. Before trial, the defendant moved to suppress the cocaine seized by Detective Kane during his stop of Shea's pickup truck. The superior court denied the motion following an evidentiary hearing, ruling that "[b]ased on the totality of the circumstances, the Court finds that the information provided to the police, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of the truck." The defendant then accepted a finding of guilty on the possession charge based on the State's proffer of evidence.

On appeal, the defendant argues that the trial court erred in denying his motion to suppress. He argues that officers stopped Shea's pickup truck without reasonable suspicion that he had broken the law. Accordingly, he asserts that the stop violated both his State and federal constitutional rights. We address the defendant's argument first under the New Hampshire Constitution, referring to federal cases only insofar as they provide us with guidance. See State v. Ball, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). Because the State Constitution provides at least as much protection in this area as its federal counterpart, we decline to conduct a separate federal analysis. See State v. Koppel, 127 N.H. 286, 289, 499 A.2d 977, 979–80 (1985).

Under part I, article 19 of our State Constitution, a police officer may temporarily detain an individual for investigation if the officer has a reasonable suspicion that the person detained has committed, is committing, or is about to commit a crime. State v. Mortrud, 139 N.H. 423, 424, 654 A.2d 464, 464–65 (1995). The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." State v. Brodeur, 126 N.H. 411, 415, 493 A.2d 1134, 1137–38 (1985) (quotation omitted).

When the facts underlying a police officer's suspicion are provided by an informant, we examine the reliability and credibility of the

informant, and his or her basis of knowledge, to determine whether there was reasonable suspicion to conduct a stop. *State v. Melanson*, 140 N.H. 199, 201, 665 A.2d 338, 339–40 (1995); *State v. Kennison*, 134 N.H. 243, 247, 590 A.2d 1099, 1101 (1991). We base our judgment on the totality of the circumstances. *Kennison*, 134 N.H. at 247, 590 A.2d at 1101.

In this case, the informant's tip was reliable and, when combined with the other information available to police, provided reasonable suspicion to stop Shea's pickup truck. Two facts support this conclusion. First, police officers corroborated important elements of the tip before they conducted their investigatory stop. *Id.* at 248, 590 A.2d at 1101; *see also State v. Conant*, 139 N.H. 728, 731, 662 A.2d 283, 286 (1995). They confirmed that the defendant drove to Lynn on January 11, that he traveled with Paul Shea, and that the two men made the trip in Shea's red Ford pickup truck. By corroborating those details, police could infer that the informant was reliable and that his allegations about the drug purchase in Lynn were true. *State v. Christy*, 138 N.H. 352, 358, 639 A.2d 261, 265 (1994). After all, "an informant [who] is shown to be right about some things . . . is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." *Alabama v. White*, 496 U.S. 325, 331 (1990).

Second, the informant's tip included accurate details about the "future actions of third parties." *Id.* at 332. Officers could therefore infer that the informant had a "special familiarity" with the defendant's affairs and would have reliable information about his drug activities. *Id.* "Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Id.*

In addition to a reliable informant's tip, the police had other evidence indicating that the defendant was engaged in illegal activity. First, officers observed suspicious and incriminating behavior when the defendant was in Lynn. *See Conant*, 139 N.H. at 731, 662 A.2d at 286 ("[a]lso relevant to our examination of reasonable suspicion is whether the police have other incriminating evidence"); *Kennison*, 134 N.H. at 248, 590 A.2d at 1101. They watched the defendant enter a bar, emerge with an unnamed individual, and then depart on a short drive which ended back at the bar. In light of the surrounding circumstances, those actions were consistent with a drug purchase and provided Detective Kane and other officers with additional grounds for believing that the defendant was engaged in illegal activity.

In addition, investigators learned that the defendant had previously been indicted for a drug offense. Although that fact, standing alone, did not justify the stop of Shea's pickup truck, it was another factor which, viewed in light of all the circumstances, reasonably led police to believe that the defendant was engaged in drug activity. *Conant*, 139 N.H. at 732, 662 A.2d at 286.

The defendant argues that our decision in *Kennison* should control this case. We disagree. In *Kennison*, we held that officers who were working with an anonymous informant lacked reasonable suspicion to conduct an investigatory stop because they had not corroborated any of the informant's incriminating allegations, had no indication that the informant was privy to the defendant's private affairs, and had observed no suspicious behavior during their investigation. *Kennison*, 134 N.H. at 247–48, 590 A.2d at 1101. In contrast, the officers in this case corroborated the informant's tip before making the stop, had reason to believe that the informant was privy to the defendant's private affairs, and had additional incriminating information linking the defendant to drug activity. The trial court did not err in denying the defendant's motion to suppress.

*Affirmed.*

All concurred.